**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DALLAS COUNTY HOSPITAL DISTRICT | § | |
| D/B/A PARKLAND HEALTH & HOSPITAL | § | |
| SYSTEM; | § | |
| PALO PINTO COUNTY HOSPITAL | § | |
| DISTRICT A/K/A PALO PINTO GENERAL | § | |
| HOSPITAL; | § | |
| GUADALUPE VALLEY HOSPITAL A/K/A | § | Civil Action No. 4:19-cv-4834 |
| GUADALUPE REGIONAL MEDICAL | § | |
| CENTER; | § | Jury Requested |
| VHS SAN ANTONIO PARTNERS, LLC | § | |
| D/B/A BAPTIST MEDICAL CENTER; | § | |
| VHS SAN ANTONIO PARTNERS, LLC | § | |
| D/B/A MISSION TRAIL BAPTIST | § | |
| HOSPITAL; | § | |
| VHS SAN ANTONIO PARTNERS, LLC | § | |
| D/B/A NORTH CENTRAL BAPTIST | § | |
| HOSPITAL; | § | |
| VHS SAN ANTONIO PARTNERS, LLC | § | |
| D/B/A NORTHEAST BAPTIST HOSPITAL; | § | |
| VHS SAN ANTONIO PARTNERS D/B/A ST. | § | |
| LUKE'S BAPTIST HOSPITAL; | § | |
| NACOGDOCHES MEDICAL CENTER; | § | |
| RESOLUTE HOSPITAL COMPANY, LLC | § | |
| D/B/A RESOLUTE HEALTH; | § | |
| THE HOSPITALS OF PROVIDENCE EAST | § | |
| CAMPUS; | § | |
| THE HOSPITALS OF PROVIDENCE | § | |
| MEMORIAL CAMPUS; | § | |
| THE HOSPITALS OF PROVIDENCE | § | |
| SIERRA CAMPUS; | § | |
| THE HOSPITALS OF PROVIDENCE | § | |
| TRANSMOUNTAIN CAMPUS; | § | |
| VHS BROWNSVILLE HOSPITAL | § | |
| COMPANY, LLC D/B/A VALLEY BAPTIST | § | |
| MEDICAL CENTER BROWNSVILLE; | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC D/B/A VALLEY BAPTIST MEDICAL | § | |
| CENTER; | § | |
| ARMC, L.P. D/B/A ABILENE REGIONAL | § | |
| MEDICAL CENTER; | § | |

1

COLLEGE STATION HOSPITAL, LP F/K/A §
COLLEGE STATION MEDICAL CENTER; §
GRANBURY HOSPITAL CORPORATION §
D/B/A LAKE GRANBURY MEDICAL §
CENTER; §
NAVARRO HOSPITAL, L.P. D/B/A §
NAVARRO REGIONAL HOSPITAL; §
BROWNWOOD HOSPITAL, L.P. D/B/A §
BROWNWOOD REGIONAL MEDICAL §
CENTER; VICTORIA OF TEXAS, L.P. §
D/B/A DETAR HOSPITAL NAVARRO; §
LAREDO TEXAS HOSPITAL COMPANY, §
L.P. D/B/A LAREDO MEDICAL CENTER; §
SAN ANGELO HOSPITAL, L.P. D/B/A SAN §
ANGELO COMMUNITY MEDICAL §
CENTER; §
CEDAR PARK HEALTH SYSTEM, L.P. §
D/B/A CEDAR PARK REGIONAL §
MEDICAL CENTER; §
NHCI OF HILLSBORO, INC. D/B/A HILL §
REGIONAL HOSPITAL; §
LONGVIEW MEDICAL CENTER, L.P. §
D/B/A LONGVIEW REGIONAL MEDICAL §
CENTER; AND §
PINEY WOODS HEALTHCARE SYSTEM, §
L.P. D/B/A WOODLAND HEIGHTS §
MEDICAL CENTER; §
      *Plaintiffs,* §
v. §
  §
AMNEAL PHARMACEUTICALS; §
AMNEAL PHARMACEUTICALS, INC.; §
TEVA PHARMACEUTICALS USA, INC.; §
CEPHALON, INC.; §
JOHNSON & JOHNSON; §
JANSSEN PHARMACEUTICALS, INC.; §
ORTHO-MCNEIL-JANSSEN §
PHARMACEUTICALS, INC. N/K/A §
JANSSEN PHARMACEUTICALS, INC.; §
JANSEN PHARMACEUTICA, INC. N/K/A §
JANSSEN PHARMACEUTICALS, INC. §
ABBOTT LABORATORIES; §
ABBOTT LABORATORIES INC.; §
  §

2

ASSERTIO THERAPEUTICS, INC. F/K/A            §
DEPOMED, INC.;                               §
NORAMCO, INC.;                               §
ENDO HEALTH SOLUTIONS INC.;                  §
ENDO PHARMACEUTICALS INC.;                   §
MALLINCKRODT PLC;                            §
MALLINCKRODT LLC;                            §
SPECGX LLC;                                  §
ALLERGAN PLC;                                §
WATSON LABORATORIES, INC.;                   §
ACTAVIS PHARMA, INC. F/K/A WATSON            §
PHARMA, INC.;                                §
ACTAVIS LLC F/K/A ACTAVIS INC.;              §
ANDA, INC.;                                  §
H. D. SMITH, LLC F/K/A H. D. SMITH           §
WHOLESALE DRUG CO.;                          §
HENRY SCHEIN, INC.;                          §
AMERISOURCEBERGEN CORPORATION;               §
AMERISOURCEBERGEN DRUG                       §
CORPORATION;                                 §
CARDINAL HEALTH, INC;                        §
MCKESSON CORPORATION;                        §
CVS HEALTH CORPORATION;                      §
CVS PHARMACY, INC.;                          §
WALGREEN CO.;                                §
WALGREENS BOOTS ALLIANCE, INC.;              §
WALMART INC.;                                §
RICHARD ANDREWS, MD;                         §
THEODORE OKECHUKU, MD;                       §
NICOLAS PADRON, MD;                          §
CARLOS LUIS VENEGAS, MD; AND                 §
JOHN DOES 1 TO 100.                          §
    *Defendants.*                              §

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and

1367, Defendant CVS Pharmacy, Inc. ("CVS") hereby removes the above-captioned

action originally filed in the 162nd Judicial District Court for Dallas County, Texas,

under Cause No. DC-19-18635, and currently pending in the Texas Opioid MDL

pretrial court in the 152nd Judicial District Court of Harris County, Texas, under Cause No. 2019-85177, to the United States District Court for the Southern District of Texas.  As grounds for removal, CVS states:

1.      Removal is timely because this notice is filed within 30 days of service of Plaintiffs' First Amended Petition on November 27, 2019, in accordance with 28 U.S.C. § 1446(b).

2.      Plaintiffs' claims arise under federal law and explicitly allege that CVS and other Defendants violated, and are liable under, a federal statute, the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.* (the "CSA") and its implementing regulations.  *See* Ex. A. First Amended Petition ¶¶ 654, 706, 732, 893, 894, 901, 1041.

3.      This Court has original jurisdiction over the subject action pursuant to 28 U.S.C § 1331 because this suit falls within the CSA, which raises a federal question.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the 152nd Judicial District Court of Harris County, Texas, where the state court action was pending as part of the Texas Opioid MDL prior to removal, is a state court within this federal district and division.

5.      Upon information and belief, all Defendants properly served have consented to removal based on federal question.

## I.      COMPLIANCE WITH LOCAL RULES

6.      Pursuant to Rule 81 of the Local Rules, CVS provides the following index of matters being filed:

| | |
|---|---|
| **Exhibit A:** | Civil Cover Sheet |
| **Exhibit B:** | Civil Case Information Sheet |
| **Exhibit C:** | Plaintiffs' First Amended Petition |
| **Exhibit D:** | Plaintiffs' Request for Citation |
| **Exhibit E:** | Plaintiff's Notice of Related Cases |
| **Exhibit F:** | Plaintiffs' requested citations |
| **Exhibit G:** | Notice of Tag-Along Case Pursuant to Rule 13 Texas Rules of Judicial Administration |
| **Exhibit H:** | Appendix A |
| **Exhibit I:** | Appendix B |
| **Exhibit J:** | Appendix C |
| **Exhibit K:** | Appendix D |
| **Exhibit L:** | Appendix E |
| **Exhibit M:** | Appendix F |
| **Exhibit N:** | State Court Docket Sheet – Dallas County |
| **Exhibit O:** | State Court Docket Sheet – Harris County |
| **Exhibit P:** | List of all Counsel of Record |
| **Exhibit Q:** | Executed Citation – Mallinckrodt PLC |
| **Exhibit R:** | Executed Citation – Abbott Laboratories Inc |
| **Exhibit S:** | Executed Citation – Anda Inc |
| **Exhibit T:** | Executed Citation – Mallinckrodt LLC |
| **Exhibit U:** | Executed Citation – Ortho-McNeil-Janssen Pharmaceuticals, Inc n/k/a Janssen Pharmaceuticals, Inc |
| **Exhibit V:** | Executed Citation – Abbott Laboratories |
| **Exhibit W:** | Executed Citation – Actavis Pharma, Inc. f/k/a Watson Pharma Inc |
| **Exhibit X:** | Executed Citation – Walmart Inc |
| **Exhibit Y:** | Executed Citation – Janssen Pharmaceutica Inc n/k/a Janssen Pharmaceuticals, Inc. |
| **Exhibit Z:** | Executed Citation – H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co. |
| **Exhibit AA:** | Executed Citation – Endo Pharmaceuticals Inc |

5

| **Exhibit BB:** | Executed Citation – CVS Pharmacy Inc |
|---|---|
| **Exhibit CC:** | Executed Citation – Janssen Pharmaceuticals, Inc. |
| **Exhibit DD:** | Defendants Janssen Pharmaceuticals, Inc. and Johnson & Johnson's Answer to Plaintiffs' Original Petition |
| **Exhibit EE:** | Defendant Cardinal Health, Inc.'s Original Answer and Affirmative Defenses to Plaintiffs' Original Petition |
| **Exhibit FF:** | AmerisourceBergen Corporation and Amerisource Bergen Drug Corporation's Original Answer |
| **Exhibit GG:** | Defendants Actavis LLC and Watson Laboratories, Inc.'s Original Answer and Affirmative Defenses to Plaintiffs' Original Petition |
| **Exhibit HH:** | Defendant Cephalon, Inc's Original Answer and Affirmative Defenses to Plaintiffs' Original Petition |
| **Exhibit II:** | Defendant Teva Pharmaceuticals USA Inc.'s Original Answer and Affirmative Defenses to Plaintiff's Original Petition |
| **Exhibit JJ:** | Noramco, Inc.'s Answer and Affirmative Defenses |

## II.    <u>NATURE OF REMOVED ACTION</u>

7.    On or about November 20, 2019, Dallas County Hospital District d/b/a Parkland Health & Hospital System; Palo Pinto County Hospital District a/k/a Palo Pinto General Hospital; Guadalupe Valley Hospital a/k/a Guadalupe Regional Medical Center; VHS San Antonio Partners, LLC d/b/a Baptist Medical Center; VHS San Antonio Partners, LLC d/b/a Mission Trail Baptist Hospital; VHS San Antonio Partners, LLC d/b/a North Central Baptist Hospital; VHS San Antonio Partners, LLC d/b/a Northeast Baptist Hospital; VHS San Antonio Partners d/b/a St. Luke's Baptist Hospital; Nacogdoches Medical Center; Resolute Hospital Company, LLC d/b/a Resolute Health; The Hospitals of Providence East Campus; The Hospitals of Providence Memorial Campus; The Hospitals of Providence Sierra Campus; The

Hospitals of Providence Transmountain Campus; VHS Brownsville Hospital Company, LLC d/b/a Valley Baptist Medical Center Brownsville; VHS Harlingen Hospital Company, LLC d/b/a Valley Baptist Medical Center; ARMC, L.P. d/b/a Abilene Regional Medical Center; College Station Hospital, LP f/k/a College Station Medical Center; Granbury Hospital Corporation d/b/a Lake Granbury Medical Center; Navarro Hospital, L.P. d/b/a Navarro Regional Hospital; Brownwood Hospital, L.P. d/b/a Brownwood Regional Medical Center; Victoria of Texas, L.P. d/b/a Detar Hospital Navarro; Laredo Texas Hospital Company, L.P. d/b/a Laredo Medical Center; San Angelo Hospital, L.P. d/b/a San Angelo Community Medical Center; Cedar Park Health System, L.P. d/b/a Cedar Park Regional Medical Center; NHCI of Hillsboro, Inc. d/b/a Hill Regional Hospital; Longview Medical Center, L.P. d/b/a Longview Regional Medical Center; and Piney Woods Healthcare System, L.P. d/b/a Woodland Heights Medical Center; (collectively "Plaintiffs") filed *Dallas County Hospital District, et al.* v. *Amneal Pharmaceuticals, LLC., et al.*, in the 162nd Judicial District Court for Dallas County, Texas.  The court assigned the case Docket No. DC1918635.  On November 27, 2019, CVS filed a Notice of Tag-Along Transfer case, transferring the case to the Texas Opioid MDL pretrial court in the 152nd Judicial District Court of Harris County, Texas, under Cause No. 2019-85177.

8.     The Petition asserts claims against four groups of Defendants.

9.     The first main group of defendants consists of Cephalon, Inc.; Teva Pharmaceuticals USA, Inc.; Watson Laboratories, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma Inc.; Actavis LLC (incorrectly named as "Actavis LLC f/k/a Actavis

Inc." in the Complaint); Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Abbott Laboratories; Abbott Laboratories Inc.; Amneal Pharmaceuticals, LLC; Amneal Pharmaceuticals, Inc.; Assertio Therapeutics, Inc. f/k/a Depomed, Inc.; Mallinckrodt plc; Mallinckrodt LLC; SpecGx LLC; and Allergan plc. (referenced in the Complaint collectively as the "Marketing Defendants," hereinafter referred to as "Manufacturing Defendants"). Pet. ¶¶ 142-196. Listed alongside the Manufacturing Defendants, but not themselves named as Defendants, are various entities and individuals that include: Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company; Richard Sackler; Beverly Sackler; David Sackler; Ilene Sackler Lefcourt; Jonathan Sackler; Kathe Sackler; Mortimer D.A. Sackler; Theresa Sackler; John Stewart; Mark Timney; Craig Landau; and Russell Gasdia (collectively referred to in the Petition as "Purdue." *id.* ¶¶ 117-132).

10.     The second group of defendants consists of Anda, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; AmerisourceBergen Corporation; AmerisourceBergen Drug Corporation; McKesson Corporation; and Cardinal Health, Inc. (collectively, "Distributor Defendants"). Pet. ¶¶ 197-216.

11.     The third group of defendants consists of CVS Health Corporation; CVS Pharmacy, Inc.; Walmart Inc.; Walgreen Co.; and Walgreens Boots Alliance, Inc. (referenced in the Petition collectively as the "National Retail Pharmacies,"

hereinafter referred to as "Retail Pharmacy Defendants"). Pet. ¶¶ 217-229. Plaintiffs allege personal jurisdiction over CVS Pharmacy, Inc. for "distributing prescription opioids throughout the United States, including Texas." *Id.* ¶ 219.

12.     The fourth and final group of defendants consists of Richard Andrews, MD; Theodore Okechuku, MD; Nicolas Padron, MD; and Carlos Luis Venegas, MD (referenced in the Petition collectively as the "'Pill Mill' Defendants," hereinafter referred to as "Individual Defendants"). Pet. ¶¶ 230-235. The Distributor Defendants and Individual Defendants together with the Retail Pharmacy Defendants are referred to collectively in the Petition as the "Supply Chain Defendants." *Id.* ¶¶ 235.

13.     The Complaint asserts five claims against all defendants: Negligence (First Claim); Negligent and/or Intentional Creation of a Public Nuisance (Second Claim); Unjust Enrichment (Third Claim); Common Law Fraud (Fourth Claim); and Civil Conspiracy (Fifth Claim). *Id.* ¶¶ 1036-1134.

14.     With respect to the Retail Pharmacy Defendants, Plaintiffs complain of the over-distribution of prescription opioids in Texas as well as the diversion of opioids from other states to Texas. Pet. ¶ 891. Plaintiffs allege the Retail Pharmacy Defendants' failure to "take meaningful action to stop this diversion despite their knowledge of it . . . contributed substantially to the diversion problem." *Id.*

15.     Plaintiffs specifically assert the Retail Pharmacy Defendants, with "manufacturers and other distributors," are registrants under the CSA, which requires the Retail Pharmacy Defendants to "provide effective controls and

procedures to guard against theft and diversion" under 21 C.F.R. § 1301.71(a).  Pet.
¶ 894.  Furthermore, the Retail Pharmacy Defendants are alleged to be responsible
for failures in "proper prescribing and dispensing of controlled substances" under 21
C.F.R. § 1306.04(a).  *See id*.

16.     Plaintiffs assert that, "[d]espite their legal obligations as registrants
under the CSA," that the Retail Pharmacy Defendants "allowed widespread diversion
to occur." Pet. ¶  901. Plaintiffs further assert the Retail Pharmacy Defendants failed
to "investigate or to ensure that they were complying with their duties and obligations
under the law with regard to controlled substances."  *Id*. ¶ 908.

17.     Plaintiffs allege the Retail Pharmacy Defendants, as subgroup of the
Supply Chain Defendants, "must also stop shipment on any order which is flagged as
suspicious" and only remove a hold after "conducting due diligence" and determining
the "order is not likely to be diverted into illegal channels."  Pet. ¶ 643 (citing *In re
Southwood Pharm., Inc.,* Revocation of Registration, 72 Fed. Reg. 36,487, 36,501,
2007 WL 1886484 (Drug Enf't Admin. July 3, 2007); *Masters Pharmaceutical, Inc.* v.
*Drug Enforcement Administration*, 861 F.3d 206 (D.C. 2017)).  The Supply Chain
Defendants "breached their duties" by "filling and failing to report or halt orders that
they knew or should have realized were likely being diverted for illicit uses," which
both "created and failed to prevent a foreseeable risk of harm" to Plaintiffs.  *Id.* ¶ 654.

18.     By making specific allegations of breach of duties governing the
monitoring, reporting and shipping of suspicious opioid orders that arise from the

federal CSA, its implementing regulations, and its precedents, Plaintiffs plead violations of federal law that form the basis for their claims.

19.     CVS was served with the First Amended Petition on November 27, 2019, and CVS's current deadline to respond to the First Amended Petition is December 23, 2019.

20.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to District Judge Dan Polster of the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1380 (J.P.M.L. 2017).  More than 2,600 opioid-related actions are pending in the MDL, including actions originally filed within the Fifth Circuit.

21.     CVS intends to tag this case immediately for transfer to the MDL.

22.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on CVS in the state court action are attached as Exhibits A-E.

## II.    **TIMELINESS OF REMOVAL**

23.     CVS was served with the First Amended Petition on November 27, 2019.

24.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiffs' First Amended Petition.  *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

25.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the

11

removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

## III.   PROPRIETY OF VENUE

26.   Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the 152nd Judicial District Court of Harris County, Texas, where the state court action was pending as part of the Texas Opioid MDL prior to removal, is a state court within this federal district and division.

## IV.   BASIS OF REMOVAL

27.   Removal is proper pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiffs' claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*[1]

---

[1] A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims* v. *Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  565 U.S. 368, 379 (2012) (brackets and citations omitted).

28.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

29.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002).  The artful pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors." *BIW Deceived* v. *Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz* v. *Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented.").  "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived*, 132 F.3d at 831.

30.     Even when state law creates causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be

13

an element, and an essential one, of the plaintiff's cause of action."); *Milkulsik* v. *Centerior Energy Corp*, 501 F.3d 509, 568 (6th Cir 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law.").

31.     When a purported state law claim is premised on violations of duty contained in a federal statute, a federal court has jurisdiction over that claim. *See Bd. of Commissioners of Se. La. Flood Protection Authority-East* v. *Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on the failure to satisfy a standard of care established in by a federal statute). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723. A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question. *Id.*; *see also Hughes* v. *Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (plaintiff's state law claims gave rise to federal question jurisdiction because the resolution of claims relied on the existence of a duty created by federal law).

14

32.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 314).

33.     As set forth below, this case meets all four requirements.

34.     Although Plaintiffs ostensibly plead some of their theories of recovery against the Retail Pharmacy Defendants as state law claims, the underlying theory of liability is based on CVS's alleged violations of federal law or alleged duties arising out of federal law, specifically the federal CSA, and its implementing regulations, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of allegedly suspicious orders that CVS had duties to identify, report, and not ship under the federal CSA.

35.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations.  *See* 21 C.F.R. § 1301.74(b) (duty to monitor and report suspicious orders of controlled substances).  The First Amended Petition makes this clear on its face.  *See* Pet. ¶ 643 (duty to report and stop shipment on any order flagged

15

as suspicious until determined not likely to be diverted into illegal channels; citing federal authorities that apply the CSA and regulations); *id.* ¶ 654 (discussing the duty to supervise the sale of "dangerous narcotic substances" and the Retail Pharmacy Defendants' failure to "prevent diversion . . . monitor for red flags . . . report or halt orders that they knew or should have realized were likely being diverted for illicit use"); *id.* ¶ 893 (duty to prevent diversion of prescription opioids by "monitoring and reporting suspicious activity"); *id.* ¶ 894 (discussing registration requirements under 21 C.F.R. § 1301.11, requirement to provide "effective controls and procedures" under 21 C.F.R. § 1301.71(a), and responsibility for "proper prescribing and dispensing of controlled substances" under 21 C.F.R. § 1306.04(a)); *id.* ¶ 896 (discussing characteristics of suspicious pharmacy orders, as defined under 21 § C.F.R. 1301.74(b); *id.* ¶ 901 (alleging Retail Pharmacy Defendants allowed diversion "despite their legal obligations as registrants under the CSA"); *id.* ¶ 906 (alleging Retail Pharmacy Defendants failed to conduct "adequate internal or external audits' of opioid sales and to "create policies accordingly"); *id.* ¶ 908 (alleging Retail Pharmacy Defendants failed to "investigate or to ensure that they were complying with their duties and obligations under the law with regard to controlled substances").

36.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the United States Drug Enforcement Administration ("DEA").   Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e),

to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc.* v. *Drug Enf't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.,* Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of DEA's "Shipping Requirement"). Plaintiffs' Complaint makes this clear on its face by citing both the federal court's decision in *Masters* and the DEA's revocation order in *Southwood Pharmaceuticals*—the sources of the asserted duty not to ship suspicious orders. *See, e.g.,* Pet. ¶ 643.

37.     Plaintiffs' theories of liability against CVS and other Retail Pharmacy Defendants, as pled in the First Amended Petition, are predicated on allegations that CVS and other Retail Pharmacy Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiffs' claims—to refuse to ship such orders to Texas and other states.

38.     Plaintiffs plead that CVS and the other Retail Pharmacy Defendants, Distributor Defendants and Supply Chain Defendants violated the foregoing federal duties, among others, with the following allegations:

a.      "The failure of the Supply Chain Defendants to maintain effective controls, and to investigate, report, and take steps to halt orders that they knew or should have known were suspicious, breached both their statutory and common law duties." Pet. ¶ 78.

b.      "In addition to reporting all suspicious orders, the Supply Chain Defendants must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as

potentially suspicious if, after conducting due diligence, the recipient can determine that the order is not likely to be diverted into illegal channels." *Id.* ¶ 643 (citing federal authorities).

c.  "By filling and failing to report or halt orders that they knew or should have realized were likely being diverted for illicit uses, Supply Chain Defendants further breached their duties." *Id.* ¶ 654.

d.  "Defendants failed to report suspicious orders, prevent diversion, or otherwise control the supply of opioids flowing communities across America . . . Defendants continued to pump massive quantities of opioids into communities in disregard of their legal duties to control the supply, prevent diversion, and report and take steps to halt suspicious orders." *Id.* ¶ 706.

e.  "Defendants violated Texas law and the federal Controlled Substances Act in failing to report suspicious orders of opioid pain medications in Texas." *Id.* ¶ 732.

f.  "Each participant in the supply chain of opioid distribution, including the National Retail Pharmacies, is responsible for preventing diversion of prescription opioids into the illegal market by, among other things, monitoring and reporting suspicious activity." *Id.* ¶ 893.

g.  "The National Retail Pharmacies, like manufacturers and other distributors, are registrants under the CSA. 21 C.F.R. § 1301.11. Under the CSA, pharmacy registrants are required to "provide effective controls and procedures to guard against theft and diversion of controlled substances." *See* 21 C.F.R. § 1301.71(a). In addition, 21 C.F.R. § 1306.04(a) states, "⌐t⌐he responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription... Because pharmacies themselves are registrants under the CSA, the duty to prevent diversion lies with the pharmacy entity, not the individual pharmacist alone." *Id.* ¶ 894.

h.  "Despite their legal obligations as registrants under the CSA, the National Retail Pharmacies allowed widespread diversion to occur—and they did so knowingly. They knew that they made money by distributing opioids under suspicious orders." *Id.* ¶ 901.

i.    "Plaintiffs allege that the National Retail Pharmacies also failed to conduct adequate internal or external audits of their opioid sales to identify patterns regarding orders that should not have been filled and to create policies accordingly, or if they conducted such audits, they failed to take any meaningful action as a result." *Id.* ¶ 906.

j.    "The Marketing Defendants and Purdue and Supply Chain Defendants overwhelmingly agreed on the approach - to fail to identify, report, or same halt suspicious opioid orders, and fail to prevent diversion." *Id.* ¶ 987.

k.    "All of the Defendants, moreover, knew that large and suspicious quantities of opioids being poured into communities were throughout the United States. Despite this knowledge, Defendants took no steps to report suspicious orders, control the supply of opioids, or otherwise prevent diversion." *Id.* ¶ 991.

l.    "The Defendants violated Texas and federal laws in failing to report suspicious orders of opioid pain medications, in failing to maintain effective controls against the diversion of opioids into other than legitimate medical channels, and in failing to operate a system to stop or at least diligently respond to orders which is flagged or should have been flagged as suspicious." *Id.* ¶ 1041.

39.    Similarly, Plaintiffs fail to cite any state law source for Supply Chain Defendants' alleged duties to "monitor" prescription opioid orders, halt suspicious orders, and prevent diversion. The Texas CSA merely requires distributors to comply with their reporting obligations under federal law. *See* Tex. Health & Safety Code §§ 481.067(a) ("A [registrant] . . . shall keep records and maintain inventories in compliance with recordkeeping and inventory requirements of federal law. . ."); .0766(a) (requiring a distributor to report "the information that the distributor is required to report to [ARCOS] and the [DEA]."). Plaintiffs do not allege how either the state statute or its implementing regulations imposes independent duties relating to suspicious orders or diversion. Rather, it is federal regulation that requires

19

distributors to develop a monitoring system to "provide effective controls and procedures to guard against theft and diversion of controlled substances." *See* 21 C.F.R. § 1301.71(a).

40.     The few specific authorities Plaintiffs cite, such as Texas Health & Safety Code § 481.070-075, do not require pharmaceutical retailers to identify or report suspicious orders of controlled substances to state government officials or entities, nor require pharmaceutical distributors to "stop," "prevent," or "avoid filling" suspicious orders of controlled substances from registered pharmacies. *Id*.   In fact, the only mention of "suspicious" within the Texas Health & Safety Code § 481.001-354 is found in Texas Health & Safety Code § 481.0771(c) regarding records and reports on pseudoephedrine, a nasal decongestant.   Tex. Health & Safety Code § 481.0771(c).   Instead, the authority cited by Plaintiffs prohibits dispensing of Schedule I substances, which have no safe, accepted medical use in the United States, *see* Tex. Health & Safety Code § 481.070, 481.035(a)(1); prohibits a practitioner from dispensing a controlled substance without a valid medical purpose or in the course of medical practice, and further discusses anabolic steroids and human growth hormone prescriptions under Schedule III, *see* Tex. Health & Safety Code § 481.071; prohibits the distribution or dispensing of controlled substances in Schedule V except for a valid medical purpose, which have the lowest potential for abuse in the controlled substances schedule, *see* Tex. Health & Safety Code § 481.072, 481.035(e); governed (before its repeal) communication of prescriptions by agent, *see* Tex. Health & Safety Code § 481.073 [Repealed]; establishes a pharmacist may not dispense or deliver

20

controlled substances without a valid prescription if the pharmacist knows a prescription was issued without a valid patient-practitioner relationship, was not prepared in compliance with the chapter, without recipient identification, or was issued by a non-pharmacist, *see* Tex. Health & Safety Code § 481.074; and regulates recording requirements for Schedule II drugs, *see* Tex. Health & Safety Code § 481.075. Thus, the only legal basis for the asserted duties on which Plaintiffs' claims rest (*i.e.*, the duties to identify, report and halt suspicious orders for prescription opioids) is federal law in the form of the CSA and implementing regulations. In other words, Plaintiffs have pled federal questions dressed up as state law claims.

41. Under the artful pleading doctrine, Plaintiffs may not escape federal jurisdiction merely by omitting citations to the federal statutes and regulations that serve as the exclusive bases for Plaintiffs' claims. *See Milkulsik*, 501 F.3d at 560. ("[P]laintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims.") (citation and internal quotation marks omitted). Where it appears that the Plaintiffs may have carefully crafted the complaint to circumvent federal jurisdiction, "we consider whether the facts alleged in the complaint actually implicate a federal cause of action." *Id.* at 561; *see also Berera* v. *Mesa Medical Group, PLLC*, 779 F.3d 352, 358 (6th Cir. 2015); *Her Majesty the Queen in Right of the Province of Ontario* v. *City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

42. The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution

in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

43.     **First**, Plaintiffs' claims "necessarily raise" a federal question because "their asserted right to relief under state law requires resolution of a federal question" regarding the asserted duties to identify, report to the DEA, and halt suspicious orders. *Rhode Island Fishermen's All., Inc.* v. *Rhode Island Dep.t of Environmental Management*, 585 F.3d 42, 49 (1st Cir. 2009); *see also Bd. of Commissioners*, 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care  contained in federal law); *PNC Bank, N.A.* v. *PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief depends upon the construction or application of federal law." (citation omitted)); *see also North Carolina ex rel. N.C. Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *V.I. Hous. Auth.* v. *Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law o*r if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles." (emphasis added)).

22

44.     As pled, Plaintiffs' claims against CVS and the other Retail Pharmacy Defendants require Plaintiffs to establish that all of the Retail Pharmacy Defendants breached duties arising under federal law, by failing to identify, report, or stop shipments of otherwise lawful orders of controlled substances into Texas and other states.

45.     For example, Plaintiffs allege that Retail Pharmacy Defendants "breached their duties" to "stop shipment on any order which is flagged as suspicious" by "filling and failing to report or halt orders that they knew or should have realized were likely being diverted for illicit uses," which both "created and failed to prevent a foreseeable risk of harm" to Plaintiffs. Pet. ¶ 643-44. As noted, however, the alleged duty to prevent or halt shipments of suspicious orders arises solely under the federal CSA, and not under state law—a fact apparent from the Petition, because Plaintiffs cite two federal authorities that interpret and apply the CSA. *See id.* ¶ 643 (citing *In re Southwood Pharm.*, 2007 WL 1886484; *Masters Pharmaceutical*, 861 F.3d 206). "Thus, it is not logically possible for [Plaintiffs] to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Retail Pharmacy Defendants to report to the DEA, and halt, shipments of suspicious orders for prescription opioids under the totality of circumstances. *Rhode Island Fishermen's All.*, 585 F.3d at 49. "That is enough to make out a federal question." *Id.*

46.     While plaintiffs are generally masters of their complaints, and they "may avoid federal jurisdiction by **exclusive** reliance on state law," *Caterpillar, Inc.*

*v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiffs here allege violations of federal duties as the basis for its state-law claims.[2]  Although Plaintiffs refer to some Texas authorities and claim they give rise to the same duties, *see* Pet. ¶¶ 641, 642, 894. Plaintiffs nowhere identify any specific provision of state law that creates duties for distributors of controlled substances to report to state officials, or refuse to fill, suspicious orders for prescription opioids.  Tellingly, Plaintiffs cite extensively to DEA letters and briefings that establish a duty to report suspicious orders and prevent opioid diversion under federal law, *id.* ¶¶ 895, 896, 897, 900, 987, in an effort to suggest that the state law provisions create the same duty.

47.    In sum, the Complaint necessarily raises a federal issue—namely, whether Retail Pharmacy Defendants violated the CSA and regulations—as well as questions regarding the scope of duties arising under federal law.

48.    **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and

---

[2] Furthermore, it is not necessary for federal jurisdiction that CVS establish that all of Plaintiffs' counts against it raise a federal question.  Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction:   "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiffs' remaining counts against CVS and the other Retail Pharmacy Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also Rhode Island Fishermen's All.* 585 F.3d at 48 ("[I]f the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest.").

24

whether Supply Chain Defendants violated their duties that, as Plaintiffs plead them, arise only under the CSA.  Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

49.    **Third**, this federal question is "substantial."[3] "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260-61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312; *see also Willis of Tex., Inc.* v. *Stevenson*, No. H-09-cv-0404, 2009 WL 7809247, at *5 (S.D. Tex. May 26, 2009) ("The Fifth Circuit has held that a claim is substantial enough to support federal question jurisdiction if the issue raised is not wholly insubstantial, obviously frivolous, plainly insubstantial, or obviously without merit.").

---

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiff's claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

50.     Plaintiffs' theories of Retail Pharmacy Defendants' liability necessarily will require that a court determine the existence and scope of Retail Pharmacy Defendants' obligations under a complex federal regulatory regime, because Plaintiffs cite and rely on asserted duties under federal law.  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control."  H.R. Rep. No. 1444, 91st Cong. (2nd Sess. 1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

51.     Plaintiffs' theories of Retail Pharmacy Defendants' liability implicate important federal interests, which "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005).  The disputed federal issue is "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc.* v. *UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).  The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people," and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801.  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of

uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson* v. *Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction"); *Rhode Island Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers."). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa* v. *Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

52.    Plaintiffs' attempt to enforce the CSA under the guise of state claims raises a substantial federal question, especially as the CSA does not provide for any private right of action, much less one enforceable through state claims brought in state courts.  In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g., Ranck* v. *Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy

Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

53.     Removal is particularly appropriate here because Plaintiffs' action is but one of more than a thousand similar actions nationwide pending in the federal MDL in the Northern District of Ohio.  The MDL judge, Judge Polster, is seeking a national solution to this nationwide problem.[4]

54.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.  Federal courts exclusively hear challenges to DEA's authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with how federal courts and the federal agency tasked with enforcing the CSA—the DEA— apply them.  Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

55.     In sum, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."

---

[4] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018.  Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

*Grable*, 545 U.S. at 314; *see also, e.g., PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

56.    To the extent that the Court determines that some, but not all, of Plaintiffs' claims raise a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants, Distributor Defendants, Retail Pharmacy Defendants, and Individual Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.    **OTHER REMOVAL ISSUES**

57.    Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

58.   The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below:  CVS Health Corporation;   Abbott   Laboratories;   Abbott   Laboratories   Inc.;   Amneal Pharmaceuticals, Inc.; Amneal Pharmaceuticals LLC; Assertio Therapeutics, Inc. f/k/a Depomed, Inc.; Cardinal Health, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; H. D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Company; Henry Schein, Inc.; Mallinckrodt LLC; SpecGx LLC; Celphalon, Inc.; Teva Pharmaceuticals USA, Inc.; Actavis LLC; Watson Laboratories, Inc.; Walmart Inc.; Noramco, Inc.; Walgreens Boots Alliance, Inc.; Walgreen Co.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.

59.   The remaining Defendants have not been properly served, and thus their consent to removal is not required.   Nevertheless, out of an abundance of caution, Allergan plc[5]; Maillinckrodt plc[6]; Actavis Pharma, Inc. f/k/a Watson Pharma Inc. consent to removal.[7]

---

[5] Allergan plc, an Irish corporation, has not been served but nevertheless consents to removal out of an abundance of caution and expressly reserves all rights and defenses including those related to personal jurisdiction and service of process.

[6] Mallinckrodt plc, an Irish public limited company, has not been served but nevertheless joins this removal out of an abundance of caution and expressly reserves all rights and defenses including those related to personal jurisdiction and service of process.

[7] No citations of service are on file for the named individual defendants. *Scott v. Family Dollar Stores of Texas, LLC*, No. 5:17-CV-817-DAE, 2017 WL 11221434, at *2 (W.D. Tex. Oct. 18, 2017) ("But courts have recognized exceptions to the rule of unanimity where the non-consenting defendant was not yet served with process at the time the removal petition was filed, where a

60.     By filing this Notice of Removal, CVS and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.  If any question arises as to propriety of removal to this Court, CVS requests the opportunity to present briefing and oral argument in support of its position that this case has been properly removed.

61.     Pursuant to 28 U.S.C. § 1446(d), CVS will promptly file a copy of this Notice of Removal with the clerk of the 152nd Judicial District Court of Harris County, where the action is pending in the Texas Opioid MDL prior to removal, and serve notice of the filing of this Notice of Removal on Plaintiffs.

62.     CVS reserves the right to amend or supplement this Notice.

**WHEREFORE**, CVS Pharmacy, Inc. removes this action, pending in the 152nd Judicial District Court of Harris County, under the Case No. 2019-85177, to this Court.

---

defendant is merely a nominal, unnecessary, or formal party-defendant, and where the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c).")

Respectfully submitted,

By:    */s/ David B. Weinstein*
        David B. Weinstein
        State Bar of Texas No. 21096400
        S.D. No. 4329
Attorney-In-Charge
WEINSTEIN TIPPETTS & LITTLE LLP
7500 San Felipe Street, Suite 500
Houston, Texas 77063
Tel:  (713) 244-0800
Fax:  (713) 244-0801
david.weinstein@wtllaw.com

OF COUNSEL:

WEINSTEIN TIPPETTS & LITTLE LLP
Matthew E. Coveler
State Bar No. 24012462
S.D. No. 24130
matthew.coveler@wtllaw.com
Amanda L. Catalani
State Bar No. 24101602
S.D. No. 3299063
amanda.catalani@wtllaw.com

ZUCKERMAN SPAEDER LLP
Conor B. O'Croinin*
Daniel P. Moylan*
J. Michael Pardoe*
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel:  (410) 332-0444
Fax:  (410) 659-0436
cocroinin@zuckerman.com
dmoylan@zuckerman.com
mpardoe@zuckerman.com

*\* Denotes national counsel who will seek
pro hac vice admission*

**Attorneys for Defendants CVS
Pharmacy Inc. and CVS Health
Corporation**

## CONSENTS TO REMOVAL

| WEINSTEIN TIPPETTS & LITTLE LLP | MEHAFFYWEBER, P.C. |
|---|---|
| By: */s/ David B. Weinstein*<br>David B. Weinstein<br>State Bar No. 21096400<br>S.D. No. 4329<br>Matthew E. Coveler<br>State Bar No. 24012462<br>S.D. No. 24130<br>Amanda L. Catalani<br>State Bar No. 24101602<br>S.D. No. 3299063<br><br>7500 San Felipe Street, Suite 500<br>Houston, Texas  77063<br>Tel:  (713) 244-0800<br>Fax:  (713) 244-0801<br>david.weinstein@wtllaw.com<br>matthew.coveler@wtllaw.com<br>amanda.catalani@wtllaw.com<br><br>Conor B. O'Croinin*<br>Daniel P. Moylan*<br>J. Michael Pardoe*<br>ZUCKERMAN SPAEDER LLP<br>100 East Pratt Street, Suite 2440<br>Baltimore, MD 21202-1031<br>Tel:  (410) 332-0444<br>Fax:  (410) 659-0436<br>cocroinin@zuckerman.com<br>dmoylan@zuckerman.com<br>mpardoe@zuckerman.com<br>* *Denotes national counsel who will seek pro hac vice admission*<br><br>*Attorneys for Defendants CVS Pharmacy, Inc. and CVS Health Corporation* | By: */s/James G. Martingano*<br>JAMES G. MARTINGANO<br>State Bar No. 00791194<br>jamesmartingano@mehaffyweber.com<br>500 Dallas Street, Ste. 1200<br>Houston, TX 77002<br>Telephone: (713) 655-1200<br>Facsimile: (713) 655-0222<br><br>John A. McCauley*<br>James K. O'Connor*<br>VENABLE LLP<br>750 E. Pratt Street<br>Suite 900<br>Baltimore, MD 21202<br>T: (410) 244-7655<br>F: (410) 244-7742<br>JMcCauley@Venable.com<br>JKO'Connor@Venable.com<br><br>*\*denotes national counsel who will seek pro hac vice admission*<br><br>*Counsel for Abbott Laboratories and Abbott Laboratories Inc.* |

**REED SMITH LLP**

By: */s/ Stan Perry*
      Stan Perry
      State Bar No. 15799920
      sperry@reedsmith.com
      Michael H. Bernick
      State Bar No. 24078227
      mbernick@reedsmith.com
      Mary M. Balaster
      State Bar No. 24084054
      mbalaster@reedsmith.com
      Curtis Waldo
      State Bar No. 24090452
      cwaldo@reedsmith.com
      811 Main Street, Suite 1700
      Houston, Texas 77002-6110
      Telephone:   713.469.3800
      Facsimile:   713.469.3899

      *Counsel for AmerisourceBergen Drug Corporation*

**BAKER BOTTS L.L.P.**

By: */s/ Kevin M. Sadler*
      Kevin M. Sadler
      Texas Bar No. 17512450
      kevin.sadler@bakerbotts.com
      Scott D. Powers
      Texas Bar No. 24027746
      scott.powers@bakerbotts.com
      David T. Arlington
      Texas Bar No. 00790238
      david.arlington@bakerbotts.com
      98 San Jacinto Blvd., Suite 1500
      Austin, Texas 78701
      (512) 322-2500 (Telephone)
      (512) 322-2501 (Facsimile)

      *Attorneys for Assertio Therapeutics, Inc. f/k/a Depomed, Inc.*

| LOCKE LORD LLP | BAKER & HOSTETLER LLP |
|---|---|
| By: */s/ John P. McDonald* | By: */s/ Michael W. Mengis* |
| John P. McDonald | Michael W. Mengis, |
| Attorney-In-Charge | attorney-in-charge |
| Texas Bar. No. 13549090 | mmengis@bakerlaw.com |
| S.D. Tex. No. 259119 | State Bar No. 13941040 |
| 2200 Ross Avenue, Suite 2800 | Matt R. Raley |
| Dallas, Texas 75201 | mraley@bakerlaw.com |
| 214-740-8758 (telephone) | State Bar No. 24051224 |
| 214-756-8758 (facsimile) | 811 Main Street, Suite 1100 |
| jpmcdonald@lockelord.com | Houston, Texas 77002 |
|  | Telephone: (713) 751-1600 |
| Of Counsel: | Facsimile:  (713) 751-1717 |
| C. Scott Jones |  |
| Texas Bar. No. 24012922 | Enu Mainigi* |
| S.D. Tex. No. 30151 | emainigi@wc.com |
| sjones@lockelord.com | F. Lane Heard* |
|  | lheard@wc.com |
| Lauren M. Fincher | Ashley W. Hardin* |
| Texas Bar No. 24069718 | ahardin@wc.com |
| S.D. Tex. No. 1812325 | Williams & Connolly LLP |
| lfincher@lockelord.com |  |
|  | 725 Twelfth Street N.W. |
| Brandan J. Montminy | Washington, D.C. 20005 |
| Texas Bar No. 24088080 | Telephone: (202) 434-5000 |
| S.D. Tex. No. 2209842 | Facsimile:  (202) 434-5029 |
| brandan.montminy@lockelord.com | *Denotes national counsel who will |
|  | seek pro hac vice admission |
| *Attorneys for Defendant* |  |
| *Henry Schein, Inc.* | *Attorneys for Defendant* |
|  | *Cardinal Health, Inc.* |

| | |
|---|---|
| **SCHELL COOLEY RYAN CAMPBELL LLP**<br><br>By:  */s/ Russ Schell*<br>    RUSSELL W. SCHELL<br>    State Bar No. 17736800<br>    Email: rschell@schellcooley.com<br>    5057 Keller Springs Road,<br>    Suite 425<br>    Addison, Texas 75001<br>    (214) 665-2000<br>    (214) 754-0060 FAX<br><br>*Counsel for Defendants Amneal Pharmaceuticals, Inc. and Amneal Pharmaceuticals LLC* | **BARNES & THORNBURG LLP**<br><br>By: */s/ Lucas C. Wohlford*<br>    Lucas C. Wohlford<br>    State Bar No. 24070871<br>    Barnes & Thornburg LLP<br>    2121 North Pearl, Suite 700<br>    Dallas, Texas 75201<br>    Phone: (214) 258-4106<br>    Fax: (214) 258-4199<br>    lwohlford@btlaw.com<br><br>*Counsel for H. D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Company* |

**ARNOLD & PORTER KAYE
SCHOLER LLP**

By:  */s/ Hannah Sibiski*
     Hannah Sibiski
     State Bar No. 24041373
     700 Louisiana Street
     Suite 4000
     Houston, TX 77002
     Telephone: (713) 576-2400
     Fax: (713) 576-2499
     Hannah.Sibiski@arnoldporter.com

     *Attorney for Defendants Endo
     Health Solutions Inc. and Endo
     Pharmaceuticals Inc.*

**PARSONS MCENTIRE MCCLEARY
PLLC**

By:  */s/ Jeffrey R. Parsons*
     Jeffrey R. Parsons
     Texas Bar No. 15547200
     jparsons@pmmlaw.com
     Roger L. McCleary
     Texas Bar No. 13393700
     rmcleary@pmmlaw.com
     James C. Burnett
     Texas Bar No. 24094025
     jburnett@pmmlaw.com
     One Riverway, Suite 1800
     Houston, Texas 77056
     (713) 960-7315

     *Attorneys for Defendants
     Mallinckrodt LLC and SpecGx LLC*

**SMYSER KAPLAN & VESELKA L.L.P.**

By: */s/ Craig Smyser*
      Craig Smyser (SBN 18777575)
      Tyler G. Doyle (SBN 24072075)
      David Isaak (SBN 24012887)
      Razvan Ungureanu (SBN 24085630)
      Kristin Adler (SBN 793233)
      Michelle S. Stratton (SBN 24085606)
      Crystal Robles (SBN 24083754)
      717 Texas, Suite 2800
      Houston, TX 77002
      Phone:  713-221-2300
      Fax:  713-221-2320
      csmyser@skv.com
      tydoyle@skv.com
      disaak@skv.com
      razvan@skv.com
      kadler@skv.com
      mstratton@skv.com
      crobles@skv.com

*Counsel for McKesson Corporation*

**JONES DAY**

By: */s/ Elizabeth W. Scofield*
      Elizabeth W. Scofield
      Texas Bar No.: 24079555
      S.D. Tex. No.: 2227083
      717 Texas, Suite 3300
      Houston, TX 77002-2712
      Telephone: (832) 239-3789
      Facsimile: (832) 239-3600
      Email: escofield@jonesday.com

      Christopher Lovrien*
      Sarah Conway*
      JONES DAY
      555 South Flower Street, 50th Floor
      Los Angeles, CA 90071
      Telephone: (213) 243-2567
      Facsimile: (213) 243-2539
      Email: cjlovrien@jonesday.com
      Email: sgconway@jonesday.com

*denotes national counsel who will seek pro hac vice admission*

*Attorneys for Walmart Inc*

**ALSTON & BIRD LLP**

By: */s/ Matthew A. Durfee*
    Matthew A. Durfee
    State Bar No. 24069654
    2200 Ross Avenue, Suite 2300
    Dallas, Texas 75201
    Telephone: 214-922-3400
    Facsimile: 214-922-3899
    matt.durfee@alston.com

    Daniel G. Jarcho*
    D.C. Bar No. 391837
    ALSTON & BIRD LLP
    950 F Street NW
    Washington, DC 20004
    Telephone: (202) 239-3254
    Facsimile: (202) 239-3333
    daniel.jarcho@alston.com

    Cari K. Dawson*
    Georgia Bar No. 213490
    Jenny A. Hergenrother*
    Georgia Bar No. 447183
    ALSTON & BIRD LLP
    1201 West Peachtree Street
    Atlanta, Georgia 30309
    Telephone: (404) 881-7000
    Facsimile: (404) 881-7777
    cari.dawson@alston.com
    jenny.hergenrother@alston.com

    *Denotes national counsel who
    will seek pro hac vice admission*

    *Counsel for Defendants Noramco,
    Inc.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Nancy L. Patterson*
    Nancy L. Patterson
    Texas Bar No. 15603520
    S.D. Tex. No. 10221
    nancy.patterson@morganlewis.com
    1000 Louisiana Street, Suite 4000
    Houston, Texas 77002
    Telephone: (713) 890-5000
    Facsimile: (713) 890-5001

    Steven A. Reed*
    Morgan, Lewis & Bockius LLP
    1701 Market Street
    Philadelphia, PA 19103-2921
    Telephone: (215) 963-5603
    steven.reed@morganlewis.com

    Brian M. Ercole*
    Morgan, Lewis & Bockius LLP
    200 S. Biscayne Blvd., Suite 5300
    Miami, FL 33131
    Telephone: (305) 415-3416
    brian.ercole@morganlewis.com

    *denotes national counsel who will
    seek pro hac vice admission*

    *Counsel for Defendants Celphalon,
    Inc., Teva Pharmaceuticals USA,
    Inc., Actavis LLC, Actavis Pharma,
    Inc. f/k/a Watson Pharma, Inc., and
    Watson Laboratories, Inc.*

| | |
|---|---|
| **BARTLIT BECK LLP** | **SCOTT DOUGLAS & MCCONNICO LLP** |
| By: */s/ Lester C. Houtz* | |
| Lester C. Houtz* | By: */s/ Stephen E. McConnico* |
| Alex J. Harris* | Stephen E. McConnico |
| BARTLIT BECK LLP | Asher B. Griffin |
| 1801 Wewatta Street | John W. Ellis |
| Denver, CO 80202 | 303 Colorado Street, Suite 2400 |
| Tel: (303) 592-3177 | Austin, TX  78701 |
| Fax: (303) 592-3140 | (512) 495-6300 |
| les.houtz@bartlitbeck.com | (512) 495-6399 (fax) |
| alex.harris@bartlitbeck.com | smcconnico@scottdoug.com |
| | agriffin@scottdoug.com |
| *\* denotes national counsel who will seek pro hac vice admission* | jellis@scottdoug.com |
| | |
| *Counsel for Walgreens Boots Alliance, Inc. and Walgreen Co* | Charles C. Lifland* |
| | O'MELVENY & MYERS LLP |
| | 400 S. Hope Street |
| | Los Angeles, CA 90071 |
| | (213) 430-6000 |
| | clifland@omm.com |
| | |
| | *\* Denotes national counsel who will seek pro hac vice admission* |
| | |
| | *Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.* |

40

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2019, this instrument was served on the following counsel in compliance with Rule 5 of the Federal Rules of Civil Procedure via e-mail to the U.S. District Court, Southern District of Texas, Houston Division, and served the same, via e-mail and U.S. Mail, postage prepaid, upon counsel of record addressed as follows:

Warren T. Burns
Darren P. Nicholson
Will Thompson
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Tel: (496) 904-4550
Fax:  (496) 444-5002
wburns@burnscharest.com
dnicholson@burnscharest.com
wthompson@burnscharest.com

Rick Yelton III
Lydia A. Wright
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Tel: (504) 799-2845
Fax: (504) 881-1765
ryelton@burnscharest.com
lwright@burnscharest.com

Zona Jones
HARRISON DAVIS STEAKLEY MORRISON JONES, P.C.
850 Park Street
Beaumont, TX 77701
Tel: (409) 753-0000
Fax: (409) 833-0075
zona@thetriallawyers.com

Don Barrett
BARRETT LAW GROUP, P.A.

404 Court Square North
Lexington, MS 39095
Tel: (662) 834-9168
donbarrettpa@gmail.com

Jonathan W. Cuneo
Monica Miller
Mark H. Dubester
David L. Black
Jennifer E. Kelly
Evelyn Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202)789—3960
jonc@cuneolaw.com
monica@cuneolaw.corn
mark@cuneolaw.com
dblack@cuneolaw.com
jkelly@cuneolaw.corn
evelyn@cuneolaw.corn

Steve Martino
Ruth Lichtenfeld
TAYLOR MARTINO, P.C.
455 St. Louis Street
Mobile, AL 36602
Telephone: (251) 433—3131
stevemartino@taylormartino.com
ruth@taylormartino.com

                    */s/ David B. Weinstein*
                    David B. Weinstein