**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
–**Houston Division**–

DALLAS COUNTY HOSPITAL
DISTRICT D/B/A/ PARKLAND
HEALTH & HOSPITAL SYSTEM, *et al.*,

        *Plaintiff*

        –v–

AMNEAL PHARMACEUTICALS, *et al.*,

        *Defendants.*

Case No. 4:19–cv–04834

The Honorable Keith P. Ellison

**DEFENDANT CVS PHARMACY, INC.'S RESPONSE**
**TO PLAINTIFFS' EMERGNECY MOTION TO REMAND**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............... 1

STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ...................... 1

SUMMARY OF THE ARGUMENT ............................................................... 2

ARGUMENT ......................................................................................... 5

   I.   THIS COURT SHOULD STAY THIS ACTION PENDING THE JPML'S IMMINENT TRANSFER DECISION. .......................................................... 5

   II.   CVS DID NOT "MANIPULATE" THE REMOVAL PROCEDURE BY REMOVING TO THIS COURT ................................................................ 9

   III.   PLAINTIFFS' CLAIMS ARISE UNDER FEDERAL LAW AND THE COURT MAY EXERCISE FEDERAL QUESTION JURISDICTION OVER THIS ACTION. ......................................................................................... 10

      A.   Federal Law Is Necessarily Raised. ................................................... 10

      B.   Federal Law Is Actually Disputed. ..................................................... 18

      C.   The Federal Issue Presented Is Substantial. ....................................... 19

      D.   The Federal Issue Is Capable of Resolution in Federal Court. ............ 21

CONCLUSION ..................................................................................... 22

CERTIFICATE OF SERVICE ................................................................... 24

INDEX OF EXHIBITS ............................................................................ 25

## TABLE OF AUTHORITIES

**CASES**

*Ayers* v. *ConAgra Foods, Inc.*, 2009 WL 982472 (S.D. Tex., Apr. 9, 2009) .................... 6

*Ayres* v. *General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000) ...................................... 11

*Bd. of Comm'rs of Se. La. Flood Prot. Auth. E.* v. *Tenn. Gas Pipeline Co.*, 850 F.3d 714 (5th Cir. 2017) ....................................................... 11, 13, 15

*Bd. of Cty. Comm'rs of Osage Cty.* v. *Purdue Pharma L.P.*, No. 4:18-cv-00461 (N.D. Okla. Nov. 14, 2018) ...................................................... 9

*Bd. of Cty. Comm'rs of Seminole Cty.* v. *Purdue Pharma L.P.*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019) ...................................................... 8

*Bender* v. *Jordan*, 623 F.3d 1128 (D.C. Cir. 2010) ........................................................ 19

*Beshear* v. *Volkswagen Group of America, Inc.,* 2016 WL 3040492 (E.D. Ky., May 25, 2016) ....................................................................... 7

*City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156 (1997) ..................................... 11

*City of Eagle Pass* v. *Purdue Pharma L.P.*, No. 2:18-cv-00051 (W.D. Tex. Aug. 9, 2018) ........................................................................ 5

*City of Jenks* v. *Purdue Pharma L.P.*, No. 4:19-cv-00380 (N.D. Okla. Aug. 29, 2019) ............................................................................. 9

*City of Laredo, Tex.* v. *Purdue Pharma L.P.*, No. 5:18-cv00118 (S.D. Tex. Aug. 9, 2018) ........................................................................ 5

*County of Angelina* v. *Allergan PLC*, No. 4:19-cv-03590 (S.D. Tex., Dec. 2, 2019) .................................................................................... 3

*County of Duval* v. *Purdue Pharma L.P.*, No. 4:19-cv-02504 (S.D. Tex. July 26, 2019) .............................................................................. 3

*County of Jim Hogg* v. *Purdue Pharma, L.P.*, No. 4:19-cv-02816 (S.D. Tex. Sept. 4, 2019) ..................................... 2, 6, 8, 16

*County of Jim Wells* v. *Purdue Pharma, L.P.*, No. 4:19-cv-03580 (S.D. Tex. Oct. 4, 2019) ........................................ 2, 4, 8, 16

*County of Montgomery* v. *Purdue Pharma L.P.*, No. 4:17-cv-03756 (S.D. Tex. 2017) ........................................................................... 5

*County of Summit* v. *Purdue Pharma, L.P.*, No. 1:18-op-45090 (N.D. Ohio) ......................................................................................... 21

*County of Walker* v. *Abbott Labs.*, No. 4:19-cv-01767 (S.D. Tex. May 14, 2019) ............................................... 3, 5

*County of Webb, Tex.* v. *Purdue Pharma L.P.*, No. 5:18-cv-00011 (S.D. Tex. Jan. 25, 2018) ...................................................................... 5

*County of Williamson* v. *Walgreens Boots Alliance, et al.*, No. 4:19-cv-03299 (S.D. Tex., Oct. 29, 2019) ............................................... 3

*County of Zavala* v. *Purdue Pharma L.P.*, No. 2:18-cv-00052 (W.D. Tex. Aug. 9, 2018) ...................................................................... 5

*El Campo Mem'l Hosp. & W. Wharton Cty. Hosp. Dist.* v. *McKesson Corp.*, No. 4:18-cv-00751 (S.D. Tex. Mar. 8, 2018) .......................... 5

*Ellis County* v. *Walgreens Boot Alliance, Inc.*, No. 4:19-cv-02256 (S.D. Tex. July 24, 2019) ...................................................................... 3

*Fire and Police Retiree Health Care Fund* v. *CVS Health Corporation*, No. 4:19-cv-02089 (S.D. Tex. June 7, 2019) .................................. 16

*Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1 (1983) ............................................................................. 18

*Gonzales Healthcare Sys.* v. *McKesson Corp.*, No. 1:18- cv-45867 (N.D. Tex. July 24, 2018) .................................................................. 5

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ................................................................................................ 20

*Gunn* v. *Minton*, 568 U.S. 251 (2013) ................................................ 2, 19

*Haulmark Services, Inc.* v. *Solid Group Trucking, Inc.*, 2014 WL 5768685 (S.D. Tex., Nov. 5, 2014) .................................. 22

*Hughes* v. *Chevron Phillips Chem. Co.*, 478 F. App'x 167 (5th Cir. 2012) ....... 13, 16, 18

*Hulley Enterps. Ltd.* v. *Russian Fed'n*, 211 F. Supp. 3d 269 (D.D.C. 2016) ............................................................................................... 7

*In re Nat'l Prescription Opiate Litig.*, MDL No. 1:17-md-2804 (N.D. Ohio July 24, 2019) ........................................................................ 18

*In re Nat'l Prescription Opiate Litig.*, MDL No. 1:17-md-2804, 2018 WL
4019413 (N.D. Ohio Aug. 23, 2018) ................................................................ 17

*In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio
July 2, 2019) ........................................................................................................ 21

*In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL
180246 (N.D. Ohio Jan. 14, 2019) .................................................................... 17

*In Re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio
Aug. 19, 2019) ..................................................................................................... 21

*Jim Wells County* v. *Purdue Pharma L.P.*, No. 4:19-cv-03580 ........................................ 2

*Johnson County* v. *Purdue Pharma, L.P.*,
No. 4:19-cv-01637 (S.D. Tex. May 3, 2019) .................................................... 16

*Kaufman Cty.* v. *Purdue Pharma L.P.*, No. 3:18-cv-02270-M (N.D. Tex.
Aug. 27, 2018) ...................................................................................................... 5

*Kentucky* v. *McKesson Corp.*, No. 3:18-cv-00010 (E.D. Ky. Apr. 12,
2018) ..................................................................................................................... 6

*Martin* v. *Franklin Capital Corp.*,
546 U.S. 132 (2005) ............................................................................................ 22

*NASDAQ OMX Grp., Inc.* v. *UBS Securities, LLC*, 770 F.3d 1010 (2d
Cir. 2014) ............................................................................................................. 16

*Noble Cty. Comm'rs* v. *Cardinal Health, Inc.*, No. 2:18-cv-01379 (S.D.
Ohio Dec. 14, 2018) ............................................................................................ 7

*North Carolina by & through N.C. Dep't of Admin.* v. *Alcoa Power
Generating, Inc.*, 853 F.3d 140 (4th Cir. 2017) .............................................. 16

*North Carolina ex rel. N.C. Dep't of Admin.* v. *Alcoa Power Generating,
Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) .......................................................... 11

*Pennsylvania ex rel. Kane* v. *McGraw-Hill Cos.*, No. 1:13-cv-605, 2013
WL 1397434 (M.D. Pa. Apr. 5, 2013) ............................................................... 7

*Ranck* v. *Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-2409-AA, 2017 WL
1752954 (D. Or. May 2, 2017) .......................................................................... 21

*Ruiz* v. *Walgreen Co.*, 79 S.W.3d 235 (Tex. App.—Houston [14th Dist.]
2002, no pet.) ..................................................................................................... 15

*Takoma Reg'l Hosp.* v. *Purdue Pharma, L.P.*, No. 2:19-cv-00157-HSM-CHS (E.D. Tenn. Oct. 4, 2019) ......................................................................... 6, 9

*Virgin Islands Hous. Auth.* v. *Coastal Gen. Const. Svcs. Corp.*, 27 F.3d 911 (3d Cir. 1994) .......................................................................................... 16

**STATUTES**

21 U.S.C. § 801 ................................................................................................. 19, 20

21 U.S.C. § 823 ....................................................................................................... 13

21 U.S.C. § 832 ....................................................................................................... 13

21 U.S.C. § 842 ....................................................................................................... 13

25 Tex. Admin. Code § 229.420 ............................................................................ 15

28 U.S.C. § 1367(a) ................................................................................................ 11

28 U.S.C. § 1447 ..................................................................................................... 22

28 U.S.C.A. § 1441 ................................................................................................. 10

Tex. Admin. Code § 281.7 ..................................................................................... 14

Tex. Admin. Code § 291.74 ................................................................................... 14

Tex. Civ. Prac. & Rem. Code § 74.001 ................................................................ 15

Tex. Health & Safety Code § 481.067 ................................................................. 15

Tex. Health & Safety Code § 481.0766 ......................................................... 13, 15

Tex. Health & Safety Code § 481.0767 ............................................................... 13

Tex. Health & Safety Code § 481.128 ................................................................. 15

Tex. Occupations Code § 562.056 ........................................................................ 14

**REGULATIONS**

21 C.F.R. § 1301.71 ................................................................................................ 13

21 C.F.R. § 1301.74 ................................................................................................ 13

**OTHER AUTHORITIES**

H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970
U.S.C.C.A.N. 4566 .......................................................................................... 20

Hearing Information, Judicial Panel on Multidistrict Litigation,
http://www.jpml.uscourts.gov/hearing-information ........................................ 5

Defendant CVS Pharmacy, Inc. submits this response in opposition to Plaintiffs' Emergency Motion to Remand, Motion for Expedited Review, and Motion for Attorney's Fees and Costs. Dkt No. 5 ("Mot. to Remand").

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a recently-filed prescription opioid case that is indistinguishable from the more than 2,600 opioid lawsuits that have been aggregated in a multidistrict litigation referred to as "the Opiate MDL." Like hundreds of the lawsuits pending in the Opiate MDL, this case began in state court, was removed to federal court, and then conditionally transferred to the Opiate MDL by the JPML. The JPML is now poised to consider whether to finalize its Conditional Transfer Order, previously filed in this case at Dkt. No. 34-10, at one of its upcoming hearings (likely in March 2020).

In the meantime, Plaintiffs moved to remand and to strike the notice of removal on December 16, 2019. Dkt. No. 6, 10. CVS opposed Plaintiffs' motion to strike on December 30, 2019. Dkt. No. 22. And, on January 3, 2020, CVS moved for a temporary stay of remand proceedings (the "Stay Motion") to allow the JPML a brief opportunity to consider whether to finalize its order transferring this case to the Opiate MDL. Dkt. No. 34.

## STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

If the Court follows the lead of Chief Judge Rosenthal in the substantively identical cases of *Jim Hogg* and *Jim Wells*, and briefly stays this matter until the JPML considers whether to finalize its transfer order, Plaintiffs' remand motion will be decided by the District Judge presiding over the Opiate MDL: The Honorable Dan A. Polster. In the event that the JPML decides not to finalize its transfer order or if

this Court takes up the issues before the JPML has a chance to rule, this Court will need to decide whether a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251 (2013).

## SUMMARY OF THE ARGUMENT

Rather than resolve the jurisdictional issues presented by Plaintiffs' motion to remand, the Court should adopt the reasoning of Chief Judge Rosenthal and should stay this action pending an imminent transfer decision by the Judicial Panel on Multidistrict Litigation ("JPML"). As discussed in CVS's motion to stay, Chief Judge Rosenthal recently considered this exact issue in two cases involving substantively identical claims: *Jim Hogg County* v. *Purdue Pharma L.P.*, No. 4:19-cv-02816, and *Jim Wells County* v. *Purdue Pharma L.P.*, No. 4:19-cv-03580. Chief Judge Rosenthal stayed the proceedings in *Jim Hogg* and *Jim Wells* pending the final transfer determination of the JPML. Orders, *Jim Hogg* and *Jim Wells* (previously filed in this case at Dkt. No. 34-7, 34-8). *Jim Hogg* and *Jim Wells* have since transferred to the multidistrict litigation pending in the Northern District of Ohio, *In re National Prescription Opiate Litigation*, No. 17-md-2804 ("Opiate MDL"). *Jim Wells County*, Dkt. No. 9 (transfer order to the Opiate MDL); *Jim Hogg County*, Dkt. No. 15 (same). This case should be transferred and consolidated with those cases. Like those cases, this case is indistinguishable from the over 2,600 cases pending in the Opiate MDL. And just as in those cases, the JPML has issued a conditional transfer order, the briefing on which has concluded. The JPML will, in all likelihood, finalize its conditional transfer order at its March 2020 hearing, transferring this case to the

Opiate MDL. That is where Plaintiffs' remand motion should be decided, where it can be addressed in a single opinion along with the scores of cases that raise the same jurisdictional issue.

Although Plaintiffs focus on two remand orders by Judge Andrew Hanen, as well as a smattering of cases decided outside of the Southern District of Texas, Plaintiffs largely ignore (in addition to the two stay decisions by Chief Judge Rosenthal) decisions by four other judges of this court—decisions by Judge Lynn Hughes, Judge David Hittner, Judge Kenneth Hoyt, and Judge Vanessa Gilmore—staying six other opioid cases in these circumstances. *See* Order, *Ellis County* v. *Walgreens Boot Alliance, Inc.*, No. 4:19-cv-02256 (S.D. Tex. July 24, 2019) (Hittner, J.) (previously filed in this case at Dkt. No. 34-4) (granting motion for a temporary stay of proceedings to allow the JPML to decide whether the case should be transferred to the Opiate MDL); Order, *County of Duval* v. *Purdue Pharma L.P.*, No. 4:19-cv-02504 (S.D. Tex. July 26, 2019) (Hittner, J.) (previously filed in this case at Dkt. No. 34-5) (same); Order, *County of Walker* v. *Abbott Laboratories, et al.*, 4:19-cv-01767 (S.D. Tex., July 15, 2019) (Hughes, J.) (same); Order, *County of Williamson* v. *Walgreens Boots Alliance, et al.*, No. 4:19-cv-03299 (S.D. Tex., Oct. 29, 2019) (Hughes, J.) (previously filed in this case at Dkt. No. 34-8) (same); Order, *County of Angelina* v. *Allergan PLC*, No. 4:19-cv-03590 (S.D. Tex., Dec. 2, 2019) (Hoyt, J.) (previously filed in this case at Dkt. No. 34-9) (same); Order, *Rockwall County* v. *Purdue Pharma L.P.*, No. 4:19-cv-02181 (S.D. Tex. June 17, 2019) (Gilmore, J.) (previously filed in this case at Dkt. No. 34-2) (case administratively closed during the pendency of the Opiate

MDL). In fact, in one of the most recent opinions, Chief Judge Rosenthal noted, "[t]he pending motion to remand presents factually and legally difficult issues. Other cases consolidated before the MDL transferee court in Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of those issues, to improve judicial economy, and to reduce the risk of inconsistent results." Order, *County of Jim Wells* (previously filed in this case at Dkt. No. 34-7). The same result should hold here; the Court should stay these proceedings and defer resolution of Plaintiffs' motion to remand.

Should this Court decide to depart from these decisions and undertake to resolve Plaintiffs' remand motion, the Court should nevertheless deny the motion. Plaintiffs' claims present a federal issue that should be decided by a federal court. Plaintiffs contend that their claims arise solely and independently under state law. But simply avoiding the necessary federal law in a complaint does not change the reality that Plaintiffs' claims arise solely under federal law. The federal aspect to this case is not, as Plaintiffs contend, some small element. On the contrary, the sole source of Defendants' alleged duties underpinning this case is the federal Controlled Substances Act ("CSA"). Plaintiffs' reliance on district court cases from other jurisdictions is misplaced because those cases interpret other states' laws that create different duties, none of which are at issue here. The question here is what duties are created by the Texas laws cited by Plaintiffs in their Petition. The answer is none.

## ARGUMENT

## I.   THIS COURT SHOULD STAY THIS ACTION PENDING THE JPML'S IMMINENT TRANSFER DECISION.

As an initial matter, the Court should not decide Plaintiffs' remand motion. As in *Jim Hogg* and *Jim Wells*, and as set out in CVS's Stay Motion, Plaintiffs' allegations are nearly identical to the allegations in the thousands of opioid lawsuits that already have been transferred to the Opiate MDL. The JPML has already entered a Conditional Transfer Order. JPML Dkt. No. 6587 (previously filed in this case at Dkt. No. 34-10). As is the JPML's typical procedure, that order is currently stayed to allow Plaintiffs the opportunity to file an opposition, and the matter will be decided at one of the JPML's upcoming hearings.[1]

Because the JPML has already transferred numerous cases from federal courts in Texas[2] and other district courts around the country, it is likely this one will be transferred as well. Once transferred, the Opiate MDL can decide whether this case—and all of the similar cases already pending before it—should remain in federal court or should be remanded. That is the purpose of multidistrict litigation—to conserve

---

[1]   *See* Hearing Information, Judicial Panel on Multidistrict Litigation, http://www.jpml.uscourts.gov/hearing-information.

[2]   *E.g.*, Order, *County of Walker* v. *Abbott Labs.*, 4:19-cv-01767 (S.D. Tex. July 15, 2019) (Hughes, J.) (previously filed in this case at Dkt. No. 34-3); Order, *Kaufman Cty.* v. *Purdue Pharma L.P.*, No. 3:18-cv-02270-M (N.D. Tex. Aug. 27, 2018); Order, *Gonzales Healthcare Sys.* v. *McKesson Corp.*, No. 1:18- cv-45867 (N.D. Tex. July 24, 2018); *City of Eagle Pass* v. *Purdue Pharma L.P.*, No. 2:18-cv-00051 (W.D. Tex. Aug. 9, 2018); *El Campo Mem'l Hosp. & W. Wharton Cty. Hosp. Dist.* v. *McKesson Corp.*, No. 4:18-cv-00751 (S.D. Tex. Mar. 8, 2018); *City of Laredo, Tex.* v. *Purdue Pharma L.P.*, No. 5:18-cv00118 (S.D. Tex. Aug. 9, 2018); *County of Montgomery* v. *Purdue Pharma L.P.*, No. 4:17-cv-03756 (S.D. Tex. 2017); *County of Webb, Tex.* v. *Purdue Pharma L.P.*, No. 5:18-cv-00011 (S.D. Tex. Jan. 25, 2018); *County of Zavala* v. *Purdue Pharma L.P.*, No. 2:18-cv-00052 (W.D. Tex. Aug. 9, 2018).

judicial resources and ensure consistency in rulings.[3] As Chief Judge Rosenthal explained, the case "presents factually and legally difficult issues," and "[o]ther cases consolidated before the MDL transferee court in Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of those issues, to improve judicial economy, and to reduce the risk of inconsistent results." Order, *County of Jim Hogg* (previously filed in this case at Dkt. No. 34-6). That same reasoning applies here.

Similarly, in a virtually identical hospital case, a district court in another opioid action brought by a group of hospital plaintiffs stayed proceedings, including a pending remand motion, in an opioid case removed on the same federal question theory that was the basis for removal here. Order, *Takoma Reg'l Hosp.* v. *Purdue Pharma, L.P.*, No. 2:19-cv-00157-HSM-CHS (E.D. Tenn. Oct. 4, 2019) (attached as Exhibit 1). As the *Takoma* court explained, "[t]o the extent that other removing defendants have asserted similar or identical theories of federal question jurisdiction in opioid-related cases, Judge Polster will be able to issue a uniform ruling on the matter, minimizing the risk of inconsistency." *Id.*; *see also* Order at 3, *Kentucky* v. *McKesson Corp.*, No. 3:18-cv-00010 (E.D. Ky. Apr. 12, 2018) ("Judge Polster has indicated his desire to address motions to remand collectively . . . .") (previously filed in this case at Dkt. No. 34-14); *Noble Cty. Comm'rs* v. *Cardinal Health, Inc.*, No. 2:18-cv-01379 (S.D. Ohio Dec. 14, 2018) (attached as Exhibit 2) ("Plaintiff's jurisdictional

---

[3] *See Ayers* v. *ConAgra Foods, Inc.*, 2009 WL 982472, at *1 (S.D. Tex., Apr. 9, 2009) ("[J]udicial economy is served by a stay pending transfer [to an MDL] if the issues involved in the remand motion are likely to arise in cases that have been or will be transferred to the MDL transferee court.").

concern is capable of arising in several of these prescription opioid cases across the country. . . . As such, this Court declines to rule on the merits of Plaintiff's Motion to Remand and defers that decision to Judge Polster . . . to determine where the case should be.").[4] That is precisely why scores of opioid cases just like this one have been stayed by judges across the country—including in this district. *See* Exhibit 10 to CVS's Stay Motion, Dkt. No. 34-11 (listing more than 80 cases that have been removed on federal question grounds and either stayed pending transfer or transferred to the Opiate MDL).

Plaintiffs can point to no prejudice from a brief stay to allow the JPML time to consider whether to finalize its transfer decision. Indeed, Chief Judge Rosenthal noted that the JPML's expeditious decision-making alleviates any potential prejudice: "The potential prejudice to the County if a stay is granted is from delay. That potential for prejudice is reduced by the relatively expeditious pace of the

---

[4] The Court does not, as Plaintiffs assert, have a "responsibility to evaluate its subject matter jurisdiction" before deciding CVS' Stay Motion. Mot. to Remand at 5. That position has been rejected by numerous courts and is inconsistent with the stays that have already been granted in scores of opioid cases. *See Hulley Enterps. Ltd.* v. *Russian Fed'n*, 211 F. Supp. 3d 269, 279 (D.D.C. 2016) (concluding that there is not a "single case requiring that a court establish jurisdiction before taking measures pursuant to its inherent power to manage its docket"); *see also Pennsylvania ex rel. Kane* v. *McGraw-Hill Cos.*, No. 1:13-cv-605, 2013 WL 1397434, at *2 (M.D. Pa. Apr. 5, 2013) (finding that " [There is] no authority for the principle that district courts must examine subject matter jurisdiction prior to instituting a stay."). Should this Court find it necessary to conduct a preliminary assessment of jurisdiction before addressing the motion to stay, that preliminary analysis confirms that a stay is warranted. *Beshear* v. *Volkswagen Group of America, Inc.,* 2016 WL 3040492, at *3 (E.D. Ky., May 25, 2016) (explaining that when courts conduct a preliminary analysis of jurisdiction, "the appropriate inquiry . . . is not necessarily the eventual possibility that this case *could* be remanded to state court, but rather whether there is any reasonable possibility that federal jurisdiction exists - or . . . whether federal jurisdiction is *clearly* absent. . . . '[If] the jurisdictional issue appears factually or legally difficult,' the court should 'determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding.'") *Id.*

JPML's decision on transfer . . . ." Order at 3, *Cty. of Jim Wells* (previously filed in this case at Dkt. No. 34-7); Order at 3, *Cty. Of Jim Hogg* (previously filed in this case at Dkt. No. 34-6) (same). Instead, Plaintiffs argue that expedited treatment is necessary to prevent this case from being "siloed with thousands of other cases in opioid multi-district litigation." Mot. to Remand at 1. That is an argument against transfer that should be directed to the JPML rather than this Court. Indeed, Plaintiffs contention is really against the formation of the MDL itself.

But Plaintiffs will not be prejudiced by litigating its case in the Opiate MDL. The parties have made substantial progress there; discovery has been active for more than a year, including comprehensive written discovery, approximately 300 defense depositions, tens of millions of documents produced, and dozens of expert reports and depositions. The initial claims set for trial already have been resolved, and the parties are in the process of preparing the next set of claims for trial. No prejudice will result from this case proceeding in the Opiate MDL.

Plaintiffs also complain that their motion to remand may not be timely addressed in the Opiate MDL. Mot. to Remand at 6 ("[T]he MDL court has placed a moratorium on all motions to remand . . . ."). Yet numerous district courts have rejected this concern. *E.g.*, Order at 4, *Bd. of Cty. Comm'rs of Seminole Cty.* v. *Purdue Pharma L.P.*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019) (attached as Exhibit 3) ("The Court is confident that plaintiff's remand motion would be heard and ruled by the MDL court in due time."); Order at 5, *Bd. of Cty. Comm'rs of Osage Cty.* v. *Purdue Pharma L.P.*, No. 4:18-cv-00461 (N.D. Okla. Nov. 14, 2018) (granting motion to stay despite

"moratorium" given Judge Polster's "preference for a 'framework' that would allow consistent resolution of remand motions" (citations omitted)) (attached as Exhibit 4). Furthermore, any short delay will be more than offset by the judicial efficiency and consistency gained from allowing the Opiate MDL to address this motion together with the scores of similar motions already pending before it. Order at 3-4, *Takoma Reg'l Hosp.,* No. 2:19-cv-157 (E.D. Tenn. Oct. 4, 2019) ("[M]onths of delay in a case that would . . . probably take years to resolve is [not] likely to yield serious prejudice," but rather, is "simply the price of uniformity, which has long been—and for good reason—a central goal of the federal judiciary") (Exhibit 1); Order at 5, *City of Jenks* v. *Purdue Pharma L.P.*, No. 4:19-cv-00380 (N.D. Okla. Aug. 29, 2019) (rejecting plaintiff's argument that a stay would cause the action to be "stuck in litigation purgatory" and ruling that "[t]he court does not doubt Judge Polster's intent to determine jurisdictional issues at the appropriate time.") (attached as Exhibit 5).

In short, a stay is warranted to best serve judicial efficiency and ensure consistent treatment of an action nearly identical to thousands of other cases

## II.   CVS DID NOT "MANIPULATE" THE REMOVAL PROCEDURE BY REMOVING TO THIS COURT

Plaintiffs first contend that CVS and other Defendants have "manipulate[d] venue under [28 U.S.C.] § 1441" by removing this case to this district. Plaintiffs assert that by removing a case after it has transferred to the coordinated state multidistrict litigation located in Harris County, *In re Texas Opioid Litigation*, No. 18-0358 (the "Texas MDL"), is improper. Mot. to Remand at 7-9. Plaintiffs are wrong.

9

The removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place *where such action is pending*." 28 U.S.C.A. § 1441 (emphasis added). Although this action originated in Dallas County—which is in the Northern District of Texas—it was pending in the Harris County District Court at the time of removal. CVS's removal of this case to this Court was therefore proper.[5]

## III. PLAINTIFFS' CLAIMS ARISE UNDER FEDERAL LAW AND THE COURT MAY EXERCISE FEDERAL QUESTION JURISDICTION OVER THIS ACTION.

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (2013). Plaintiffs' action not only satisfies all four factors, but removal is especially proper because Plaintiffs' action is nearly identical to the approximately 2,600 actions currently pending in the Opiate MDL.

### A. Federal Law Is Necessarily Raised.

Plaintiffs' state law claims necessarily raise a federal question because the asserted right to relief under state law necessarily requires resolution of a federal

---

[5] Regardless of where the cases were filed initially, numerous cases pending in the Texas MDL have been removed to this Court. *See supra* p. 5-6 (listing eight cases that were removed from the Texas MDL to this Court and then stayed).

question.[6] *Ayres* v. *General Motors Corp.*, 234 F.3d 514, 518 (11th Cir. 2000); *see also North Carolina ex rel. N.C. Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("'[W]here the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration, internal quotation marks, and citation omitted)), *cert. denied*, 138 S. Ct. 981 (2018); *Bd. of Comm'rs of Se. La. Flood Prot. Auth. E.* v. *Tenn. Gas Pipeline Co.* (hereinafter, "*Louisiana Flood*"), 850 F.3d 714, 722-23 (5th Cir. 2017) (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care contained in federal law), *cert. denied*, 138 S. Ct. 420 (2017). Because the only possible source of the alleged duties of the Supply Chain Defendants[7] is the federal CSA, the scope of which the parties will debate, federal law is necessarily raised. The first *Grable* factor is satisfied.

---

[6] Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997); *see also* 28 U.S.C. § 1367(a).

[7] Plaintiffs define CVS and certain other defendants as the "National Retail Pharmacies," Pet. ¶ 228, and then appear refer to the "Distributor Defendants" and the "National Retail Pharmacies" collectively as "Supply Chain Defendants," though the term Supply Chain Defendants is never explicitly defined in the Petition. The Distributor Defendants are named in their capacities as distributors of opioids. Although referred to as "National Retail Pharmacies," the allegations against the purported retailers similarly focus on the distribution of opioids. *See* Pet. ¶ 893 ("Each participant in the supply chain of opioid distribution, including the National Retail Pharmacies, is responsible for preventing diversion of prescription opioids into the illegal market by, among other things, monitoring and reporting suspicious activity."); *id.* at ¶ 955 ("The Supply Chain Defendants have continued to unlawfully ship these massive quantities of opioids"); *id.* at ¶ 80 ("As facilitated and caused by Supply Chain Defendants' actions, opioids' distribution has skyrocketed.").

11

Plaintiffs point out that they "plead *solely* Texas state law claims" in arguing that no federal question is presented in this case. Mot. to Remand, at 11-13. But Plaintiffs identify no state law that gives rise to the central duty that Plaintiffs claim the Supply Chain/Distributor Defendants violated: the alleged duty to "monitor, detect, investigate, report, and refuse to fill" suspicious orders of controlled substances. Pet. ¶ 68; *see also id.* at ¶ 762 ("Distributors must also stop shipment on any order which is flagged as suspicious . . . ."); *id.* at ¶ 771 ("Distributor Defendants knew they were required to monitor, detect, and halt suspicious orders."); *id.* at ¶ 775 ("Each Distributor Defendant owes a duty to monitor, detect and refuse suspicious orders of prescription opioids . . . ."). This is unsurprising. If the relevant provisions of the Texas CSA impose any duty on Supply Chain Defendants like CVS, it is, at most, an obligation to follow the recordkeeping and reporting requirements under the *federal CSA*.

To distribute within the State, a distributor must "report to the [Texas State Board of Pharmacy] the information that the distributor is required to report to the Automation of Reports and Consolidated Orders System (ARCOS) of the *Federal Drug Enforcement Administration* for the distribution of a controlled substance by the distributor to a person in this state." TEX. HEALTH & SAFETY CODE § 481.0766(a) (2017) (emphasis added). A distributor must also "keep records and maintain inventories in compliance with recordkeeping and inventory requirements of *federal law.*" *Id.* § 481.067(a) (emphasis added). More broadly, the source of the asserted legal duties to prevent diversion and to monitor, investigate, and report suspicious orders

of controlled substances is the CSA and its implementing regulations as promulgated by the Drug Enforcement Administration ("DEA"). *See* 21 U.S.C. § 823(b), (e); *id.* § 832; *id.* § 842(c)(1)(B); 21 C.F.R. § 1301.74(b). And federal regulation requires distributors to develop a monitoring system to "provide effective controls and procedures to guard against theft and diversion of controlled substances." *See* 21 C.F.R. §§ 1301.71(a), 1301.74(b). Plaintiffs offer no state regulation requiring such a monitoring system separate from the federal rules. Plaintiffs also provide no authority for any such affirmative monitoring and reporting duties at common law.

When there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," and the "duty would have to be drawn from federal law," a federal court has jurisdiction over that claim. *Louisiana Flood*, 850 F.3d at 723 (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy a standard of care established in federal statute); *see also Hughes* v. *Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (holding that plaintiff's state claims gave rise to federal question jurisdiction because resolution relied on duty contained in federal law). Accordingly, Plaintiffs necessarily rely on violations of federal law as the basis for their claims.

Plaintiffs identify no independent state law basis for these purported monitoring, investigating, and reporting duties. Although Plaintiffs argue that they assert "*exclusively* state law causes of action and seek *exclusively* state law remedies," Mot. to Remand, at 1, and "[b]ecause Plaintiffs do not seek relief under any federal law, no federal question arises," *id.* at 11, the only state statutes and regulations that

13

Plaintiffs cite either adopt federal standards (and therefore do not create independent duties) or pertain to only physicians or pharmacies (and therefore are irrelevant to Plaintiff's claims against the Manufacturer Defendants and Supply Chain Defendants). TEX. OCCUPATIONS CODE § 562.056(a-1) pertains to the "proper prescribing and dispensing of prescriptions drugs" by the "prescribing practitioner" and with the "pharmacist who fills the prescription." And all of the cited provisions in Texas Administrative Code Chapter 22 were promulgated by the Texas State Board of Pharmacy and pertain *only to pharmacies*. *See* TEX. ADMIN. CODE § 291.74(b)(2)(B) (pertaining to maintaining records and preventing theft or diversion at a pharmacy); *id.* § 281.7(a)(23) (defining the term "unprofessional conduct" as applied to pharmacists). None of the Defendants are sued as pharmacies. Most of the named defendants are *distributors and manufacturers* of prescription opioid medications.[8]

The only state laws or regulations cited by Plaintiffs that concern distributors merely incorporate by reference federal standards from the CSA and other applicable federal regulations. For example, Plaintiffs claim that Defendants "violated

---

[8] Even if Plaintiff had sued CVS in its dispensing capacity as a pharmacy—it has not— Plaintiff still has failed to identify any state law imposing any alleged duty on any defendant drug manufacturer or distributor. Furthermore, a dispensing suit would be a medical malpractice case subject to the Texas Medical Liability Act ("TMLA") because it would "derive[] from the pharmacist's alleged negligent actions that were inextricably related to his professional duty of dispensing medication." *Ruiz* v. *Walgreen Co.*, 79 S.W.3d 235, 239 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see* TEX. CIV. PRAC. & REM. CODE § 74.001(12)(A)(iv) (defining "health care provider" under the TMLA to include a pharmacist). The TMLA imposes procedural requirements, including pre-suit notice, and Plaintiff has complied with none of them.

provisions of the Texas Controlled Substances Act, Tex. Health & Safety Code §§ 481.001 through 481.354 . . . ." Pet. ¶ 642. As explained *supra*, page 14-15, Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ §§ 481.067(a) and 481.0766(a) require distributors to make proper reports to the Federal DEA and comply with recordkeeping and inventory requirements of federal law.[9] Plaintiffs also cite Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ § 481.128, but that provision simply provides that it is an offense to distribute opioids in violation of Schedule C (§§ 481.070-.080).

On this point, the Fifth Circuit's ruling in *Louisiana Flood* and *Hughes* is instructive: a federal question was presented because federal law created the duty underlying Plaintiff's claims and the Court would necessarily adjudicate the scope of federal law when evaluating the merits of those claims. *Louisiana Flood*, 850 F.3d at 722-23 (federal question jurisdiction exists because claims were premised on failure to satisfy a standard of care established in federal statute); *see also Hughes*, 478 F. App'x at 170-71 (plaintiff's state claims gave rise to federal question jurisdiction because resolution relied on duty contained in federal law). Similarly, *North Carolina by & through N.C. Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140 (4th Cir. 2017), *NASDAQ OMX Grp., Inc.* v. *UBS Securities, LLC*, 770 F.3d 1010 (2d Cir. 2014), and *Virgin Islands Hous. Auth.* v. *Coastal Gen. Const. Svcs. Corp.*, 27 F.3d 911

---

[9] In addition, though not cited by Plaintiffs, 25 Tex. Admin. Code § 229.420 makes clear that the department intended to adopt federal standards pertaining to opioids. 25 Tᴇx. Aᴅᴍɪɴ. Cᴏᴅᴇ § 229.420 refers to the laws and regulations of the State Health Services, Food and Drug, and it consists entirely of a laundry list of all the *federal laws* that the department adopts—including the federal regulations pertaining to controlled substances. *See* 25 Tᴇx. Aᴅᴍɪɴ. Cᴏᴅᴇ § 229.420(a) (adopting, among others, the provisions within the Code of Federal Regulations).

(3d Cir. 1994), support removal here because the federal CSA is the governing body of law necessarily construed.

This case is thus distinguishable from the cases Plaintiffs cite, *see* Mot. to Remand at 11-14, most of which expressly acknowledge that the claims (involving the laws of other states) could be decided without reference to the duties imposed by the CSA. Plaintiffs cite two remand orders issued by Judge Andrew Hanen of this Court,[10] Mot. to Remand at 12, however, Plaintiffs downplay the fact that there has been an unbroken line of stay orders issued by five judges of this Court in the eight opioid cases removed since Judge Hanen's decisions. *See supra* p. 5-6 (citing eight cases stayed by various judges of this Court) (previously filed in this case at Dkt. No. 34-2 through 34-9).[11] To be clear—both in this Court and elsewhere—the more common approach has been to allow conditionally transferred cases to transfer to the MDL so that Judge Polster can resolve all removal questions at once.

Plaintiffs also cite several cases that were remanded by the Opiate MDL. *Id*. But none is on point. First, Plaintiffs' reliance on a *withdrawn* remand order by Judge Polster in a case brought by the Kentucky attorney general does not reflect a

---

[10] In decisions that predated *Jim Hogg* and *Jim Wells*, Judge Hanen parted company with Judge Hughes, Judge Gilmore, and Judge Hittner and remanded two prescription opioid actions: *Johnson County* v. *Purdue Pharma, L.P.*, No. 4:19-cv-01637 (S.D. Tex. May 3, 2019) and *Fire and Police Retiree Health Care Fund* v. *CVS Health Corporation*, No. 4:19-cv-02089 (S.D. Tex. June 7, 2019).

[11] Defendants also removed *County of Kleberg* v. *CVS Health*, *et al.* to this Court on July 31, 2019. *County of Kleberg*, No. 4:19-cv-02815 (S.D. Tex., July 31, 2019), Dkt. No. 1 (notice of removal). The case was assigned to Judge Alfred H. Bennett. Judge Bennett opted not to rule on either CVS's motion to stay or Plaintiff's motion to remand. This allowed the JPML a brief period of time to decide whether transfer of the case to the Opiate MDL was appropriate. And, on December 19, 2019, the JPML issued a transfer order transferring this case to the Opiate MDL following its December hearing. Dkt. No. 41 (JPML Transfer Order).

determination of the jurisdictional issues raised here. *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019) (attached as Exhibit 6); Mot. to Remand, at 12. Nor does it reflect a departure from Judge Polster's expressed intent to decide remand motions and other jurisdictional issues collectively to ensure consistent rulings on substantially similar questions of law and fact. The now-withdrawn order rested in large part on grounds not present here. Judge Polster emphasized that he would have granted Kentucky's remand motion because the court had "already recognized that it has no jurisdiction over state cases filed by state attorneys general." *Id.* at *2; *see also id.* (citing only cases filed by state AGs).

Another order Plaintiffs cite involved an entirely different federal statute as grounds for removal, the Food & Drug Act. *In re Nat'l Prescription Opiate Litig.*, MDL No. 1:17-md-2804, 2018 WL 4019413 at *2 (N.D. Ohio Aug. 23, 2018) (rejecting argument that plaintiff's claims would usurp FDA labeling requirements because none of the marketing or messages at issue were approved by the FDA, but rather implicated solely state law). And, with respect to the *Jefferson/Franklin County* actions, Plaintiffs ignore that a Missouri state court judge expressly requested the MDL court remand those cases. The state court judge stated that, "for efficiency purposes [the state court judge] would like to be able to include the cases in the same geographic area." Order at 1, *In re Nat'l Prescription Opiate Litig.*, MDL No. 1:17-md-2804, Dkt. No. 1987 (N.D. Ohio July 24, 2019). Judge Polster noted that such "a request from a state court colleague warranted very serious consideration" and "decided to exercise [the court's] discretion" and remand those cases. *Id.* at 1,

3. Judge Polster also stated that he "will not entertain additional requests of this nature." *Id.* at 3. More significantly, Judge Polster retained jurisdiction over the same claims asserted by 18 of the 20 original plaintiffs in that action.

Although Plaintiffs may be the master of their complaint, they may not circumvent proper federal jurisdiction simply by omitting necessarily federal questions from its complaint. *Hughes*, 478 F. App'x at 171 (quoting *Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)). These federal laws do not simply inform a state issue—they create the alleged duty underlying the action.

### B.    Federal Law Is Actually Disputed.

The parties "actually dispute" the federal question. In particular, the parties dispute whether Plaintiffs have a viable cause of action to sue under the CSA, and whether certain defendants violated any alleged duties to monitor, detect, investigate, and report suspicious orders. This federal issue is the "central point of dispute," *Gunn*, 568 U.S. at 259, and therefore, the second *Grable* factor is met.

Plaintiffs argue that there is no actually-disputed federal question because Plaintiffs did not directly plead a federal issue—again missing the point. Plaintiffs cannot avoid an actually-disputed federal issue simply by omitting reference to the applicable law from its Complaint.[12] As in *Bender* v. *Jordan*, "this case presents a nearly pure issue of federal law." 623 F.3d 1128, 1130 (D.C. Cir. 2010). The great weight of authority favors staying opioid cases to await transfer to the Opiate MDL.

---

[12] Plaintiffs themselves cite federal law numerous times in their Complaint. *E.g.,* Compl. ¶ 42, 521, 894.

18

*See* Exhibit 10 to CVS's Stay Motion (listing more than 80 cases that have been removed on federal question grounds and either stayed pending transfer or transferred to the opiate MDL) (previously filed in this case at Dkt. No. 34-11).

## C.   The Federal Issue Presented Is Substantial.

The federal issue presented is substantial, because the federal government has a strong interest in a nationally uniform approach to controlled substances. *See Gunn*, 568 U.S. at 260. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id*. This third factor is met because Congress recognized that the illegal uses of controlled substances "have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(2), (6). Indeed, this is one of the reasons that over 2,600 cases—raising identical issues—are currently pending in the Opiate MDL.[13] In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4572. The federal courts and the Opiate MDL court are best

---

[13] Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72. The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(2), (6).

positioned to uniformly interpret these duties. Just as the federal government had a direct interest in vindicating its own administrative actions to recover delinquent taxes in *Grable*, so too here does the federal government have a direct interest in administering the regulatory system Congress put in place with respect to opioid medications.

In fact, the plaintiffs in the Opiate MDL filed a motion asking Judge Polster to rule that registrants under the federal CSA have a statutory and regulatory duty to monitor, investigate, and halt suspicious orders of opioids, under their theory that the federal CSA is the underlying source of authority for imposing any such duties on distributors of opioid medications.[14] *See* Summ. Sheet, Pls.' Mot. for Partial Summary Adjudication of Defs.' Duties Under the Controlled Substances Act, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio July 2, 2019), Dkt. No. 1799. And in its August 19, 2019 "Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing The Controlled Substances Act," the court considered the CSA and DEA's implementing regulations and the duties imposed by them, and then "examine[d] what the Defendants actually did compared to what the law

---

[14] Plaintiffs argue that "[t]he fact that there is no cause of action under the FCSA itself strongly militates against the notion that state law claims relating to its subject matter necessarily implicate substantial federal questions." Mot. to Remand at 15. But Plaintiffs' attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 317 (2005); *see also, e.g., Ranck* v. *Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-2409-AA, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

requires." *See* Order at 5, *In Re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Aug. 19, 2019), Dkt. No. 2483. This puts beyond doubt that the federal issue is front and center and should be determined by the federal courts.

### D.    The Federal Issue Is Capable of Resolution in Federal Court.

Finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors and manufacturers. Litigating this case in a state court would create the risk of the state court applying federal requirements in a manner in tension or in conflict with the way the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore properly exercised under Section 1331 to resolve "disputed issues of federal law" under the CSA.

Once again, Plaintiffs' claims are nearly identical to the over 2,600 cases currently pending in the Opiate MDL—including state common law claims. *See, e.g.*, *County of Summit* v. *Purdue Pharma, L.P.*, No. 1:18-op-45090 (N.D. Ohio). It defies reason that Plaintiffs' case is not similarly capable of resolution in federal court.[15]

---

[15] There is no merit to Plaintiffs' request for fees and costs. Courts "may" award attorney's fees under 28 U.S.C. § 1447(c) only where the removing party "lacked an objectively reasonable basis for seeking removal." *Martin* v. *Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *See Haulmark Services, Inc.* v. *Solid Group Trucking, Inc.*, 2014 WL 5768685, at *6 (S.D. Tex., Nov. 5, 2014) (defining standard).

Plaintiffs' argument that attorney's fees are properly sought because Defendants allegedly have "no objective basis for believing the Court has subject matter jurisdiction over this case" is false. The fact that, as demonstrated above, there is ample support for CVS's removal theory—including Chief Judge Rosenthal's recognition that the remand issues in these cases are "factually and legally difficult," *Jim Hogg* Stay Order, (previously filed in this case at Dkt. No. 34-6)—dispels any such notion. Accordingly, removal was proper and objectively reasonable.

## CONCLUSION

CVS respectfully requests that the Court postpone a decision on Plaintiffs' Motion to Remand. To the extent the Court considers Plaintiffs' Motion to Remand at this time, CVS respectfully requests that the Court deny Plaintiffs' motion and exercise subject matter jurisdiction over this matter

Respectfully submitted,

By:    */s/ David B. Weinstein*
       David B. Weinstein
       State Bar of Texas No. 21096400
       S.D. No. 4329
Attorney-In-Charge
WEINSTEIN TIPPETTS & LITTLE LLP
7500 San Felipe Street, Suite 500
Houston, Texas  77063
Tel:  (713) 244-0800
Fax:  (713) 244-0801
david.weinstein@wtllaw.com

OF COUNSEL:

WEINSTEIN TIPPETTS & LITTLE LLP
Matthew E. Coveler
State Bar No. 24012462
S.D. No. 24130
matthew.coveler@wtllaw.com
Amanda L. Catalani
State Bar No. 24101602
S.D. No. 3299063
amanda.catalani@wtllaw.com

ZUCKERMAN SPAEDER LLP
Conor B. O'Croinin*
M.D. Bar No. 0412150129
Daniel P. Moylan*
M.D. Bar No. 0012130119
J. Michael Pardoe*
M.D. Bar No. 1712140096
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031

22

Tel:  (410) 332-0444
Fax:  (410) 659-0436
cocroinin@zuckerman.com
dmoylan@zuckerman.com
mpardoe@zuckerman.com

*Denotes national counsel who will seek
pro hac vice admission*

**Attorneys for Defendants CVS
Pharmacy Inc. and CVS Health
Corporation**

## CERTIFICATE OF SERVICE

In accordance with Rule 5 of the Federal Rules of Civil Procedure and Local Rule 5.3, I certify that this response was served on all parties via the Court's CM/ECF system on January 6, 2020.

*/s/ David B. Weinstein*
David B. Weinstein

## INDEX OF EXHIBITS

| | |
|---|---|
| 1 | *Takoma Reg'l Hosp.* v. *Purdue Pharma, L.P.*, No. 2:19-cv-00157-HSM-CHS (E.D. Tenn. Oct. 4, 2019). |
| 2 | *Noble Cty. Comm'rs* v. *Cardinal Health, Inc.*, No. 2:18-cv-01379 (S.D. Ohio Dec. 14, 2018). |
| 3 | *Bd. of Cty. Comm'rs of Seminole Cty.* v. *Purdue Pharma L.P.*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019). |
| 4 | *Bd. of Cty. Comm'rs of Osage Cty.* v. *Purdue Pharma L.P.*, No. 4:18-cv-00461 (N.D. Okla. Nov. 14, 2018). |
| 5 | *City of Jenks* v. *Purdue Pharma L.P.*, No. 4:19-cv-00380 (N.D. Okla. Aug. 29, 2019). |
| 6 | *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019). |